UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                             :
UNITED STATES OF AMERICA
                             :
        - v. -
                             :     S7 10 Cr. 918 (RPP)
VADIM CHERVIN,
      a/k/a "Vadik,"          :

           Defendant.       :

                             :
- - - - - - - - - - - - - - - - x


## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS SECOND MOTION *IN LIMINE*


PREET BHARARA
United States Attorney for the
Southern District of New York

Sarah Lai
Jason P. Hernandez
Joshua A. Naftalis
Assistant United States Attorneys
     - Of Counsel -

## PRELIMINARY STATEMENT

The Government respectfully submits this Memorandum of Law in support of its second motion <u>in limine</u>. Specifically, the Government seeks to preclude an email from attorney Michael Lamond to his client (a factoring company) that was copied to defendant Vadim Chervin and a bill preparer. As discussed below, the email is inadmissible because it is double hearsay and irrelevant. Nor can the defendant offer it as a co-conspirator statement, especially when there is no evidence that the factoring company (or anyone at the funding company) was a co-conspirator.

## THE RELEVANT FACTS

Total Body Medical Diagnostics, PC ("Total Body") was a professional corporation – specifically a medical services corporation – incorporated in the State of New York, with Michael J. Gibbs, M.D. ("Gibbs") as its registered owner. In or about May 2010, Gibbs entered into an agreement with co-conspirators Aron Chervin ("Aron") and Vyacheslav Dobrer ("Dobrer") under which Gibbs allowed Aron, Dobrer and other co-conspirators to use the Total Body name and taxpayer identification number, as well as Gibbs' name and medical license number, on medical bills for neurological diagnostic exams that were submitted to insurance carriers that provided no-fault coverage to auto accident victims. This arrangement was essential because in New York State, only professional corporations owned and controlled by

medical professionals were eligible to submit medical claims to no-fault insurers.  Although Gibbs' PC, name, medical license number and taxpayer identification number were used to bill insurance carriers, Gibbs was only a so-called paper owner; that is, he was an owner on paper only.  In actuality, Gibbs himself did not control or manage the work of Total Body.  That was left to Aron and Dobrer, who were not and have never been medical doctors.  Aron and Dobrer hired other doctors to perform neurological exams on patients referred to them by other clinics to which they paid kickbacks.  Those doctors were dispatched to the clinics that received the kickbacks to perform the neurological tests; Total Body itself did not operate a brick-and-mortar clinic.

Defendant Vadim Chervin ("Vadim") is Aron Chervin's son.  Vadim, who was already in the medical billing business by the time of the charged conspiracy, was the principal of a billing company called Shtrahman & Associates, and was responsible for preparing the Total Body bills to the insurance carriers.  Those bills were then perfunctorily signed by Gibbs. Aside from falsely representing that Gibbs was the true owner and operator of Total Body, those bills were fraudulent in a number of other ways.  For example, they contained charges for medical tests that were never performed or were medically unnecessary as well as excessive charges for tests that were performed.

2

In order to generate a stream of income as quickly as possible from the Total Body medical bills, Aron and Dobrer did not submit the bills to the insurance carriers themselves. Instead, they sold the bills that the defendant prepared as medical receivables to Ross Elgart, who was the manager of a number of inter-related factoring companies based in Florida, including MedCash, LLC ("MedCash") and Banyan Finance, LLC ("Banyan").  Elgart, on behalf of MedCash and Banyan, purchased the medical bills from Total Body for 44.9 cents on the dollar. As part of the deal, Elgart agreed to hire Michael Lamond to prepare contracts between MedCash and Banyan, and Total Body, as well as to handle collection and arbitration of Total Body bills vis-a-vis the insurance companies.  Lamond was an attorney who had worked extensively with both Chervins, and was receiving $4,000 a month for allowing the Chervins and Dobrer to use his attorney escrow account to receive and distribute fraud proceeds.

### The Email at Issue

The defense has produced, pursuant to Rule 16 of the Federal Rules of Evidence, an email dated August 17, 2010 (the "Email"), from Lamond to Elgart and others at Banyan, and copied to Vadim and a third-party who is believed to be a bill preparer using the email address "t3306@aol.com" (the "Third-Party

Biller").[1]  <u>See</u> email attached hereto as Exhibit A.  The subject line of the Email reads, "Accurate Medical."  Accurate Medical, like Total Body, was a medical services corporation.  Unlike Total Body, Accurate Medical was not owned or controlled by any of the defendants in Indictment 10 Cr. 918 (RPP).  In the Email, Lamond informed Elgart that Accurate Medical claims contained overbilling, which would constitute fraud and a breach of the factoring contract between Accurate Medical and the factoring company.  Lamond further stated that he had met with the Third-Party Biller and her colleague and told them that "'getting away' with fraud does not justify committing it."  <u>See</u> <u>id.</u>  Lamond also said that he and the Third-Party Biller had agreed to "blank out" dollar amounts that appeared to be fraudulently overbilled.  <u>See</u> <u>id.</u>  Lamond concluded by asking Elgart to pay an extra "fee" for each Accurate Medical bill found to be prepared incorrectly, because it was time-consuming to have to review those bills so closely.  <u>See</u> <u>id.</u>

---

[1] The original Email, dated August 17, 2010, was apparently forwarded by Lamond to the defendant approximately two weeks ago, on July 16, 2012.

4

<u>ARGUMENT</u>

I.   <u>The Email Is Inadmissible</u>

For the reasons discussed below, the Email is inadmissible because it is both double hearsay and irrelevant.

A.   <u>The Email Is Double Hearsay</u>

The Email contains inadmissible double hearsay.  <u>See</u> Fed. R. Evid. 801.  The first layer of hearsay is the conversation between Lamond and the Third-Party Biller.  The only reason the defendant would want to offer that conversation is to show that Lamond, and by extension the defendant himself because he was copied on the Email, did not knowingly commit fraud.  In other words, the defendant will argue that the Third-Party Biller was speaking the truth when she said that "she routinely receives these grossly overbilled amounts from out of state carriers" and that Lamond was speaking the truth when he told the Third-Party Biller that "'getting away' with fraud does not justify committing it."  That is classic hearsay.

The second layer of hearsay is the conversation between Lamond and Elgart, in which Lamond recounts his discussion with the Third-Party Biller, and then tells Elgart that:

> reviewing the medical billing in such detail
> that we need to count nerves tested in the
> raw data and compare it to the number of
> nerves billed for on the bill (as opposed to
> just making certain that all documents are
> received, is extremely time consuming for us.

5

See Email, at 1-2.  The Government anticipates that the defendant

will argue that Lamond was speaking truthfully when he said he

counted "nerves tested" and compared them "to the number of

nerves billed."  That is also hearsay.  The argument that flows

from such hearsay will be, presumably, that the defendant did not

knowingly commit fraud because he worked with Lamond, believed

that Lamond was carefully reviewing bills, and relied on Lamond's

diligence.

       To the extent the defendants seeks to introduce the

Email as a co-conspirator's statement, and therefore not hearsay,

that argument is foreclosed by United States v. Milstein, 401

F.3d 53 (2d Cir. 2005).  There, the trial court excluded from

evidence a tape-recorded conversation between two unindicted

individuals whom Milstein alleged to be coconspirators.  Milstein

claimed the tape should have been admitted into evidence under

Federal Rule of Evidence 801(d)(2)(E) as an admission of a

coconspirator.  The Court of Appeals disagreed, explaining that

"a statement by a coconspirator of a party during the course and

in furtherance of the conspiracy" is one type of '[a]dmission by

party-opponent' defined as nonhearsay, but only if 'offered

against' the party."  Id. at 73 (quoting Fed. R. Evid.

801(d)(2)(E)).  In contrast,

          [o]ut-of-court statements by the party
          offering the statements and out-of-court
          statements by coconspirators of the party
          offering the statements, when offered for

6

their truth, remain hearsay and are not
admissible unless they fit within an
exception to the hearsay rule.

Id. at 73.  We perceive no exception to the hearsay rule that
would apply to the Email.  Therefore, it should be excluded.

**B.**   **The Email Is Not Relevant**

Even if the Email were not hearsay, or that a hearsay
exception applied, it should still be excluded because it is
irrelevant.  See Fed. R. Evid. 401(a).  As the defense correctly
indicated at the last pretrial conference, the only real issues
for the jury are whether the defendant was a knowing member of
the Total Body conspiracy and whether he knowingly prepared
fraudulent bills in the name of Total Body to insurance
companies.  The Email does not tend to make it more or less
probable that the defendant was a knowing participant in the
Total Body conspiracy for two reasons.

First, Lamond was not discussing Total Body in the
Email; he was talking about a different medical services
corporation, namely, Accurate Medical, owned and/or operated by
an individual named Sheryl Tomack.  The fact that Lamond was
alerting Elgart to allegedly fraudulent Accurate Medical bills is
not probative of the defendant's knowledge or intent as to the
Total Body insurance claims.  It should also be noted that Lamond
did not say in the Email that he would not submit problematic
Accurate Medical bills or would not work on Accurate Medical

7

bills; he simply asked Elgart for more money in order to review those bills.

      More importantly, the defendant was not the declarant; he did not write the Email.  The defendant was simply copied on the Email.  There is no indication that he agreed with Lamond's observations, shared Lamond's concerns, or even read the Email. The Email reveals nothing about the defendant's state of mind. Consequently, it is irrelevant to the issues that the jury will have to decide and should not be admitted.

### Conclusion

      For the foregoing reasons, the Government's motion <u>in limine</u> to exclude the Email dated August 17, 2010, should be granted.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Sarah Lai
Joshua A. Naftalis
Jason Hernandez
Assistant U.S. Attorneys
Tel.: (212) 637-1944/2310/1024

8