C9l1chea

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                    10-CR-918 (RPP)

VADIM CHERVIN,

            Defendant.              Oral Argument

------------------------------x

                                    New York, N.Y.
                                    September 21, 2012
                                    10:30 a.m.

Before:

           HON. ROBERT P. PATTERSON, JR.,

                          District Judge

                  APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JASON P. HERNANDEZ
JOSHUA A. NAFTALIS
     Assistant United States Attorneys

FREDERICK H. COHN, ESQ.
     Attorney for Defendant

1                (In open court; case called)

2                THE COURT:  Is the government ready?

3                MR. HERNANDEZ:  Yes.  Good morning, your Honor.  Jason
4    Hernandez and Joshua Naftalis for the United States.

5                THE COURT:  Good morning.

6                MR. COHN:  Good morning, your Honor.  Fred Cohn for
7    Mr. Chervin, who is here seated by me.

8                THE COURT:  Good morning, Mr. Cohn, and Mr. Chervin.

9                THE DEFENDANT:  Good morning.

10               THE COURT:  This is the defendant's motion.

11               MR. COHN:  Your Honor, this motion attempts to
12   recognize what I think is blindness by the judiciary as a whole
13   of the effect of a prior conviction, and in the context of this
14   case, it's a 16-year-old conviction to be used for
15   cross-examination on veracity.  It is the age of this
16   conviction which makes it I think subject to intervention by
17   you now.  And candidly -- and I mean no disrespect anywhere.
18   You've known me professionally for a long time.  There's no
19   judge I respect more.  But I think what I'm saying to you, I
20   could probably say to every judge on this bench, and that is
21   that there is a knee-jerk reaction for a conviction to be used
22   for cross-examination, which I think universally means that no
23   judge denies the motion by the government to use it that way
24   or, conversely, no judge grants the motion for the defendant to
25   suppress it.  If that's the case, if that's universally true

C9l1chea

1   and if a judge has discretion to not allow the government to
2   cross-examine on that -- and you will remember that the court's
3   decision on the cross-examination drove the tactics on the
4   affirmative use during his -- during the government's case in
5   chief and it's what caused me to argue -- to open on the
6   conviction.
7            THE COURT:  My problem throughout the case was: one, I
8   don't know exactly what's going to happen at time of trial --
9            MR. COHN:  We told you, Judge --
10           THE COURT:  -- and since I don't know what's going to
11  happen at time of trial, I don't like to --
12           MR. COHN:  I know that, Judge.
13           THE COURT:  -- predetermine what I'm going to do on
14  trial.
15           MR. COHN:  And you told us that, and I told -- and you
16  said -- and I think the record will reflect it -- that if he
17  was going to testify and be cross-examined on the conviction
18  and if that was the case, I promised that he would testify and
19  therefore that the government was going to use that on
20  cross-examination, I was going to open on it so that they
21  couldn't use it, because you said that if that was going to
22  happen, you were going to let it in on the direct case.  And
23  that's why I opened on it and tried to blunt it as much as I
24  can.  But I don't believe -- your Honor, quite frankly, despite
25  all the curative charges that you give and all the goodwill by

the court in trying to limit the scope of the use of that kind of material, that it is ineffective, that it lays like a cloud over the jury, and when they get in the jury room, even if they don't mention it, it's there.  And I think, quite candidly, if that's always the decision of a court, no matter what the age of the conviction -- and you'll remember that the rule says that in an ancient conviction, court has discretion, one way or the other.  If you always exercise your discretion for the use on cross-examination, that's an abuse of discretion.  I have no idea whether you have or you haven't in the past.  Maybe you recall, maybe you don't.  And I have -- I would not be able to argue this on the record I have in the circuit because there's no way I can track it, and I'm not going to make an allegation that you've always done that out of ignorance and sheer advocacy.  But that is, when a judge always exercises his or her discretion on a particular matter in the same way that -- there's an old case, *United States v. Brown*, Second Circuit case -- it must be 30, 40 years old -- that says that that's an abuse of discretion.  And I haven't -- I didn't brief it because I don't know what your history is and I decline to presume it.  But --

        THE COURT:  I don't know what my history is either, but I don't think it's come up very often.

        MR. COHN:  Well, the government says that there was plenty of evidence to convict him and that, you know, in the

1   face of that, you should deny the motion just on that.  I don't
2   believe that that matters when you've got something as powerful
3   as that.  This was a conviction, a 16- or 14-year-old
4   conviction for mail fraud, the same kind of -- although the
5   facts are different, the same kind of crime that was committed
6   here.  No jury can ignore that.  And so I think the strength of
7   the government's case, which they make a very, you know, potent
8   argument for in their papers, which I assume is their -- going
9   to be their lead on the -- on an appeal, if there is one, I
10  don't think it matters.  I think that what -- I don't know that
11  the court will give a judicial recognition to what is in fact,
12  from the defense point of view, is the case, and that is that
13  this is always, always -- no matter what the court tells them
14  and no matter -- and no matter what the government says about
15  it, the limited use of it, it always impacts on the jury.

16           Now there's one other thing.  The government didn't
17  even argue his prior conviction.  What the government did was,
18  it put in his and his father's convictions together and then
19  argued to the jury that the government's witness, main witness,
20  and the father were both felons and therefore the client had to
21  know about it, that he had the knowledge.  The government said
22  that the reason they were putting in his prior conviction on
23  their case in chief was to prove knowledge.  I respectfully
24  suggest that that wasn't the case, that they didn't need that
25  to prove the knowledge, given the theory that they had, and

C9l1chea

1   they never mentioned it.  They just -- it just lay there.  It
2   just lay there like a cloud over the case.
3               THE COURT:  It was only admitted for knowledge.  It
4   would be limited to knowledge in the case.
5               MR. COHN:  I know, but in fact they never argued it.
6   What they argued was -- to prove knowledge was that he knew
7   that his father and the witness, whatever his name is -- I'm
8   blocking it at the moment -- were felons.  And they could have
9   gotten that without his conviction.  If he was going to
10  testify, I would have actually stipulated that he knew they
11  were both felons, if I was asked to do that, and they could
12  have gotten it from some direct questions with limited answers,
13  which would have been the answers, "Yes, I knew," because he
14  couldn't say he didn't know.  So it just sat there.  There was
15  no purpose of getting it in except for what I -- with some
16  respect for the government, but not a lot -- I think was a
17  cynical use of the conviction.
18              And that's why I think your Honor should grant a new
19  trial.
20              THE COURT:  I haven't heard from the government.  Let
21  me hear from the government.
22              MR. COHN:  I'm sorry.  I can't hear you.
23              THE COURT:  I'd better hear from the government.
24              MR. NAFTALIS:  Your Honor, the government's position
25  is in its papers, but briefly, we raised the issue before trial

1   because we sought to admit the conviction for knowledge, and
2   that's what it was admitted for.
3   　　　　　But even stepping back, the standard is whether the
4   admission of it somehow affected the trial.  There's
5   overwhelming evidence that the defendant was guilty.  The
6   defendant fronted the issue and, in so doing, made what was to
7   be a knowledge issue a bigger issue of his own making.  He lied
8   on the stand and then he was impeached on it.  But the question
9   of whether there was knowledge was only what it was admitted
10  for by your Honor, and the impeachment was totally proper,
11  especially given the position the way the defendant attempted
12  to defend and make a bigger issue out of the conviction.
13  　　　　　THE COURT:  I think what Mr. Cohn is saying is that in
14  the summation that the statements made were placed in
15  conjunction in such a way as to possibly connote criminality of
16  all the defendants as opposed to making the distinctions, the
17  evidentiary distinctions that I tried to make in my rulings on
18  admissibility.
19  　　　　　MR. NAFTALIS:  On page 9 of our brief, your Honor --
20  　　　　　THE COURT:  How do you make that argument?
21  　　　　　MR. NAFTALIS:  Mr. Hernandez specifically cabined his
22  arguments with respect to the prior conviction.  On page 9 of
23  our brief, we cite the government's closing, and we argued only
24  with respect to knowledge.  The defendant's defense was that he
25  did not know that there was a fraud going on around him.  Our

C9l1chea

1  argument was, he had previously -- he was in business with
2  criminals, so to argue that he did not have knowledge --
3          THE COURT:  Well, doing business with criminals, but
4  that's what criminality is, isn't it?
5          MR. NAFTALIS:  Well, that's specifically permitted
6  under 404(b), your Honor.  I mean, and that was the instruction
7  you gave, that there could be knowledge.  We know that, you
8  know, there was no objection during summation.  There was no
9  surprise.
10         THE COURT:  I guess there wasn't an objection.  The
11 difficult thing is that the type of argument was limited to the
12 evidentiary ruling of the court, and I'm not sure that the
13 argument was made on summations.  On the other hand, I don't
14 know that it was something I could have, or should have, I
15 should say, because that's my rule, stepped in to try to
16 correct the possible implications of Mr. Naftalis's stating
17 that.  As I hear his argument, his argument is that it was
18 basically an argument that these two guys are criminals and
19 this guy, the defendant has a prior conviction and so they're
20 all just criminals and should be convicted.
21         MR. NAFTALIS:  Your Honor, that was not the
22 government's argument.  The government's argument was that --
23         THE COURT:  Well, how does it read from the summation?
24         MR. NAFTALIS:  This is on page 9 of our brief, which
25 is transcript 863 --

C9l1chea

1           THE COURT:  I think you have --

2           MR. NAFTALIS:  -- to 864.

3           "The next reason that Vadim Chervin knew he was
4   engaged in fraud is that he knew his business partners were
5   felons.  Chervin knew his father and Slav Dobrer were felons.
6   On cross-examination Vadim Chervin said he knew Slav Dobrer was
7   a felon but he didn't know what for.  Well, he certainly knew
8   he was a felon but he didn't know exactly what -- but he knew
9   exactly what Aron Chervin had been guilty of.

10          "If we go to the next slide, there are two government
11  exhibits, the judgments of conviction for Vadim Chervin and
12  Aron Chervin, and what you see at the very top is Aron Chervin
13  was convicted in the same case as Vadim Chervin.  The way you
14  know it's the same case is it's the same case number.  They
15  were charged in the same indictment.  Aron Chervin was guilty
16  of a conspiracy to commit money laundering, wire fraud, and
17  excise tax evasion, and below it, you see Vadim Bruselovsky,
18  also known as Vadim Chervin, was convicted of wire fraud.

19          "Vadim Chervin admitted that wire fraud is a crime of
20  dishonesty.  He knew that his business partners were felons,
21  and at least one of them, his father, was convicted of crimes
22  of dishonesty.  Those are the people he chose to work with.  So
23  you know that he knew that business partners had these problems
24  in the past, and now he says he was just a biller and that he
25  didn't think there was anything wrong."

                 That's a very narrow argument, your Honor.  And it was
really relying on the convictions of the other people.
Mr. Cohn is conflating his conviction with the convictions of
his co-conspirators, and that's really, you know -- that really
is the issue.  His conviction was really fronted up by Mr. Cohn
in his direct examination, and then it turned into impeachment
evidence when he lied.  It's the convictions of the other
co-conspirators that were really argued during the summation,
and there was no error there.  They were admitted for
knowledge.

                 And your Honor instructed the jury twice -- once
during the trial -- and it was crystal clear to them going into
the closing, they could only consider it for purposes of
knowledge, and then they were instructed again.  So we don't
think there could have been more caution, and the law says if
you've given the proper instructions, there's really nothing
wrong.

                 THE COURT:  Mr. Cohn?  Am I misunderstanding your
argument, Mr. Cohn?

                 MR. COHN:  Pardon?  No, you're not misunderstanding my
argument, your Honor.  The government has just admitted that
his conviction was unnecessary for their argument.  And that's
the issue.  That's why I'm associating it that way.  Whether
they argue that, you know, in front that they were all
criminals together or didn't --

1            THE COURT:  Well, are you arguing that the conviction

2    should not have been admitted or are you arguing that the

3    government went beyond the bounds of the limitation that I

4    placed on its admission in summation?

5            MR. COHN:  I'm arguing that it should not have been

6    admitted because of its age, that it had no impact, and that

7    the government's misuse of it infected the trial.  That's what

8    I'm saying.  The government didn't argue his conviction for

9    what they said it was for, for knowledge.  His knowledge was

10   not dependent on his conviction.  His knowledge was dependent

11   on Slav Dobrer's conviction for something, and his father's

12   conviction, which he readily admitted he knew.  They did not

13   need his conviction to do that.  And, you know, I think that

14   the court took the government at its word, which they may have

15   meant at the time until whatever it is that changed it, and

16   said that it was not for that purpose.  They were going to use

17   it for knowledge.  It had nothing to do with knowledge.  It was

18   not necessary for knowledge.  It was highly, highly

19   prejudicial, and I believe it infected the entire process.

20           MR. NAFTALIS:  Your Honor, Mr. Cohn is misstating the

21   government's position and what happened during the trial.  The

22   conviction was admitted for purposes of knowledge.  The

23   conviction was not admitted carte blanche.  What we argued was

24   very limited.  He knew in advance about the conviction and that

25   there was a strategic choice made by the defense to make this a

C9l1chea

front and center issue.  We didn't even -- the argument made in summation that we're pointing to is about knowledge with respect to similar members of the conspiracy, which is also permissible.  This is straight 404(b).  There really is just -- there's just no issue here.

And the ultimate question, your Honor, is whether Vadim Chervin is guilty, and the government proved that beyond a reasonable doubt.  There was corroborated evidence that he was not just the biller, that he was in the middle of this.  There were wiretaps showing that they were trying to hit a goal of billing, that he -- that he was not just filling out forms blindly.  So whether or not we even reach this issue, the first question is whether he's guilty, and he clearly was guilty.

THE COURT:  I think that is another issue that I've got to address in rendering an opinion here, and that is that in the overall case, in view of the evidence --

MR. COHN:  I'm sorry.  I can't hear you, your Honor.

THE COURT:  I think as a matter of law, I'm supposed to address: one, should I have admitted the prior conviction; two, having admitted it for the purposes I did admit it, did the government in summation misuse it; and then was the admission of the evidence and the ensuing misuse, if any, so prejudicial as to require a new trial.  Those seem to be the issues before the court.

MR. COHN:  I agree, your Honor.

THE COURT:  And my problem is that I tried to avoid the admission question on the prior conviction because I felt that it wasn't clear that by the time the trial came along that you'd take the same position, although you did say you would. But I've been on many trials, and counsel change their positions quite often.  So that's the reason I refused to give an advance decision.  But then when you opened, it seemed to me that I had to give the limiting instruction when the evidence was presented on the prior conviction that he already had knowledge, and I think it was the correct instruction.

Then the issue is whether it was misused.  That's one I want to think about, because it does seem to be parsed a little bit from the grounds I admitted it for, in the context that Mr. Naftalis just read off.

MR. HERNANDEZ:  Your Honor, with the court's permission, could I just address the misuse argument?

THE COURT:  Yeah.

MR. HERNANDEZ:  Remember, the case was defended by Mr. Chervin as saying he thought he was involved in the legitimate practice of a biller, he didn't know there was a fraud going on around him.  If your Honor goes back to the motion *in limine* briefing from the government, our argument for the admission of the conviction was reliant on many cases to say that when you are a member of a prior conspiracy and then you're charged with similar members, the same members, in a new

C9l1chea

1   conspiracy, the government can argue for knowledge and say,
2   well, one of the reasons the defendant could have known he or
3   she was involved in a crime the second time is because they
4   were convicted in a conspiracy a number of years back.  And
5   that I think is quite solid, middle-of-the-road caselaw.
6           THE COURT:  Well, it's got to be a conspiracy
7   involving fraud.
8           MR. HERNANDEZ:  Well, first of all, that's not a
9   problem here, because they both were fraud conspiracies.
10          THE COURT:  I don't think you can just do it on the
11  single conspiracy.
12          MR. HERNANDEZ:  That's fine, but that's not an issue
13  here because we have that parallel.
14          So keeping in mind what the caselaw supports and then
15  thinking about what the government's argument in summation was,
16  there's no propensity argument there.  There isn't an argument
17  that, well, once a felon, always a felon.  There wasn't an
18  argument that, well, they committed fraud, you know, previously
19  and so they probably did it again here.  The argument, which,
20  by the way, is two paragraphs out of the entire summation,
21  really sticks to the caselaw on membership of a conspiracy and
22  knowledge and stays right in the middle of the road.  It just
23  says, jury, you're going to have to decide knowledge in this
24  case, and Mr. Chervin has told you that he was just an honest
25  guy doing his billing, no idea there was this huge fraud going

1    on around him.  Well, that's not true, ladies and gentlemen,
2    because Vadim Chervin knew that his business partners were
3    felons because they had been, at least one, convicted in the
4    same case, Aron Chervin, for fraud, and he knew that Slav
5    Dobrer was a felon.  So when you think about his defense,
6    ladies and gentlemen, that he's just a biller, keep in mind
7    that he knew these facts and that there's much greater
8    likelihood that he knew he was involved in a fraud because he
9    was not dealing with honest businessmen; he was dealing with
10   prior felons.  And if you go back, Judge, and read the
11   summation, that is the middle-of-the-road argument, and we were
12   very careful not to make the propensity argument.  So in terms
13   of whether it was misused -- and I think there were three
14   instructions on knowledge in this case --
15             THE COURT:  I agree that it's not a propensity
16   argument, but whether that propensity instruction by the court
17   should be modified to encompass knowledge of other people, but
18   at the same time you can be a felon.  I mean, I have people who
19   are felons before me who were felons in 1961 up in Harlem on
20   cases and ever since have lived perfectly honest lives, as far
21   as I can see.
22             MR. COHN:  Excuse me, your Honor.  If Mr. Hernandez
23   will sit down, I can probably hear you better.  Thank you.
24             THE COURT:  I'm sorry.  I agree it's not a propensity
25   argument that was made, but the question is whether that

    1  instruction should really be broadened to cover other types of
    2  arguments than just propensity.

    3         MR. HERNANDEZ:  Well, your Honor, you gave the
    4  standard instruction that I think is pretty widely approved.
    5  Mr. Cohn never asked or objected for a different instruction.
    6  I don't even understand his argument to be that the instruction
    7  was flawed.  I think the argument is more that the conviction
    8  never should have come in.  And that is really a nonstarter.
    9  Mr. Chervin was testifying, so it could be used for impeachment
  10  purposes, but also very clearly for knowledge purposes.  I
  11  mean, it really would be quite a sight to have a defendant, who
  12  has a prior fraud conviction in a conspiracy with his father,
  13  indicted in a new fraud conspiracy, to then shield that from
  14  the jury as if that was not relevant to the defendant's state
  15  of mind.  I mean, it would really be kind of a remarkable
  16  thing, because it really does bear on knowledge and intent.
  17  These are not people who Mr. Chervin chose to work with who
  18  are, you know, winning awards from the Better Business Bureau
  19  every year.  These are people who have previously been engaged
  20  in fraud.  So I just wanted to address the use of the argument.
  21         THE COURT:  The content of the telephone conversations
  22  would be quite indicative of fraud going on by Mr. Dobrer
  23  particularly.  That's my recollection of the conversation.
  24         MR. HERNANDEZ:  Right, that's the second half to our
  25  argument, which is, remember that the issue here is not whether

your Honor maybe should have added a sentence or two to your instruction or whether this particular piece of evidence under the rules should have been admitted.  This is a Rule 33 motion.  Manifest injustice.  In other words, according to the circuit, was an innocent man convicted.  Absolutely not.  There's overwhelming evidence based on the conversation that Vadim Chervin knew Dr. Gibbs was not running Total Body, that Vadim Chervin knew that Dr. Gibbs could not be interviewed by GEICO because he couldn't tell the truth, that he had to be coached to lie.  Dr. Braddom's testimony about the fraud in billing, there was no good answer or explanation for other than a pattern of intentional fraud to get bills to a particular number.  There's no chance that an innocent man was convicted.

So whether on the margins the instruction should have been slightly different or not, I mean, there is really no chance, under the extraordinarily high standard of Rule 33, that there should be a new trial.

MR. COHN:  Your Honor, I've made my argument.

THE COURT:  It's something I have to think about.  I don't want to do it orally.

MR. COHN:  Very well, your Honor.

MR. HERNANDEZ:  Thank you, your Honor.

MR. COHN:  Thank you, your Honor.

o0o